**N. O. NELSON MFG. CO. v. WILKERSON et al.**

No. 1263.

Court of Appeal of Louisiana. First Circuit.

Jan. 22, 1934.

George J. Ginsberg, of Alexandria, for appellant.

S. I. Foster, of Leesville, for appellee.

ELLIOTT, Judge.

N. O. Nelson Manufacturing Company furnished Claude D. Wilkerson, subcontractor, the plumbing and heating supplies, used in the equipment of the Leesville High School Building, to the amount of $2,344.98, and alleges that there remains the sum of $1,242 as the balance due on said account.

In a suit to recover the alleged balance, it alleges that Wilkerson gave bond, as subcontractor, in the sum of $4,570.40 with Great American Indemnity Company as surety in favor of Clifford H. King, Inc., general contractor for the construction and equipment of said building, and that Clifford H. King, Inc., gave bond in the sum of $35,309.01 with Great American Indemnity Company as surety in favor of Vernon parish school board on said account, said bonds being conditioned for the performance of their respective undertakings in the matter; that said Wilkerson, Vernon parish school board, Clifford H. King, Inc., and Great American Indemnity Company are therefore indebted unto it, in solido, for the balance due on said account together with 10 per cent. in addition thereon, as attorney's fees.

The defendant Wilkerson for answer denies being indebted to the plaintiff on said account, denies that he has received proper credits,

and alleges that there is nothing due the plaintiff; that whatever he owed the plaintiff for plumbing and heating material, used in said building, has been paid. He prays that plaintiff's demand be refused and rejected.

Great American Indemnity Company, surety on Wilkerson's bond, interposed against plaintiff's demand an exception of no right or cause of action. The lower court withheld ruling on this exception, and Great American Indemnity Company, reserving all rights under its exception, filed an answer.

In its answer it denies being indebted to the plaintiff. It alleges that Wilkerson has paid plaintiff all he owed on account of the plumbing and heating equipment, sold him in connection with his contract, and prays that plaintiff's demand against it be rejected.

Clifford H. King, Inc., and Vernon parish school board each appeared and filed exceptions as to which the court withheld ruling. Reserving their rights under their exceptions, they each filed an answer in which they denied being indebted to the plaintiff. The exception of no cause of action, which they had each filed, was subsequently sustained and the suit as to these defendants was dismissed, and no appeal was taken by the plaintiff from said judgment. These two defendants are therefore not parties to this appeal and the judgment dismissing them from the suit is not reviewed.

The exception of no cause of action, filed by Great American Indemnity Company, was ultimately overruled and there was judgment on the merits in favor of the plaintiff and against Claude D. Wilkerson and Great American Indemnity Company, in solido, for $1,242 with interest. Claude D. Wilkerson did not appeal. Consequently, the judgment against him is not subject to review. Great American Indemnity Company, surety on Wilkerson's bond, appealed.

The plaintiff filed in this court an answer to its appeal in which it avers that the ruling of the lower court, sustaining the exception of no right or cause of action, filed by Clifford H. King, Inc., was erroneous, and prays that it be set aside. The plaintiff did not appeal from the judgment in that respect, so it is not open for review in the way attempted. Plaintiff's answer to the appeal, taken by Great American Indemnity Company, will be considered. Briefs have been filed in behalf of Clifford H. King, Inc., and Vernon parish school board, but these parties are not before the court.

Great American Indemnity Company contends that its exception of no right or cause of action should have been sustained. It claims that the lower court in overruling the exception relied on the provisions of Act No. 298 of 1926, which it contends is only applicable to contracts concerning buildings privately owned; that the Leesville High School Building being a public work, the liability of appellant is to be adjudged under the provisions of Act No. 224 of 1918 (amended by Act No. 271 of 1926). There is nothing to show that the lower court, in acting on the exception, did not have in mind Act No. 224 of 1918 as amended.

Appellant contends that under Act No. 224 of 1918 (amended by Act No. 271 of 1926) it was the duty of the plaintiff, as furnisher of the plumbing and heating material in the equipment of the Leesville High School Building, to make and cause to be recorded in the mortgage office of the parish of Vernon a sworn statement, showing the balance due it on said account, and to cause same to be served on the authority liable for the amount of the claim within 45 days from the acceptance of the work or within 45 days from the default of the subcontractor as a legal prerequisite to its liability to the plaintiff on said bond, that this prerequisite is not alleged in plaintiff's petition, and that its petition therefore sets forth no right or cause of action against appellant.

Act No. 224 of 1918, as amended, provides that such a statement should be made and recorded and served on the authority liable for the work within the time mentioned, but the law, section 3, as amended by Act No. 271 of 1926, § 4, contains a further provision, which reads: "provided further that nothing in this Act shall be so construed as to deprive any person or claimant within the terms of this Act of his right of action on the bond, which right shall accrue at any time after the maturity of his claim." In view of this provision, the exception was properly overruled.

Wilkerson, principal on the bond signed by appellant, for defense pleads payment. Act No. 224 of 1918, § 6, provides, that "the surety on the bond shall be limited to such defenses only as the principal on the bond." Act No. 41 of 1894 provides that the liability of bonding companies on obligations of this kind are as sureties. Wells v. Fidelity & Deposit Co., 146 La. 169, 83 So. 448. Under the law, we look on appellant's defense as limited to that of payment, subject to appellant's right to show that the account sued on is not correct and that proper credits have not been given. The answer alleges that proper credits have not been given, and it may be that under a proper accounting there remains nothing unpaid.

Under the defense that the account sued on is not correct, Wilkerson, asked to indicate the items on the account, which were improperly charged thereon, and to name credits to which he was entitled that he had not received, named a few items, claiming that they were improper charges on the account. Some of the items were in amount but a few cents, others about one dollar, some two or three dol-

lars, and only a few of greater amount. The aggregate of all would be under $50. D. T. Griffith and W. M. McKinney, witnesses for the plaintiff, testify that the account sued on is for items sold Wilkerson for the purpose of being used in the equipment of the Leesville High School Building. One item of no great importance for Kentwood Ice Company was at first by oversight charged to the account, but was discovered and removed and does not appear on the account sued on. The preponderance and more reliable evidence supports the account as sued on.

■ On the subject of payment, the burden of proof in the matter of payment is on appellant. "He who contends that he is exonerated, must prove the payment or the fact which has produced the extinction of the obligation." Civil Code, art. 2232. Appellant contends that payments imputed to the material sold by plaintiff to Wilkerson for use in the equipment of the Kentwood High School Building should have been imputed to the material sold him for the Leesville High School Building; that imputed as the law requires, the material used in the Leesville High School Building has been fully paid for; and that appellant therefore owes plaintiff nothing on the bond sued on.

■ Appellant has the right to show, under its defense of payment, that there have been erroneous and illegal imputations of payments, operating as a fraud and improper practices on appellant; but, saving as stated, a debtor may impute payments as he pleases and cannot be controlled in that respect by his surety.

The Civil Code, art. 2163, provides: "The debtor of several debts has a right to declare, when he makes a payment, what debt he means to discharge."

Article 2165. "When the debtor of several debts has accepted a receipt, by which the creditor has imputed what he has received to one of the debts specially, the debtor can no longer require the imputation to be made to a different debt, unless there have been fraud or surprise on the part of the creditor." Article 2166: "When the receipt bears no imputation, the payment must be imputed to [the payment of] the debt, which the debtor had at the time most interest in discharging; of those that are equally due; otherwise to the debt which has fallen due, though less burdensome than those which are not yet payable. If the debts be of a like nature, the imputation is made to the debt which has been longest due; if all things are equal, it is made proportionally."

■ The contract entered into between Claude D. Wilkerson and Clifford H. King, Inc., and the stipulations in the bond, signed by appellant, cannot derogate from the law giving Wilkerson the right to declare, when he made a payment, what debt he meant to discharge.

It is shown that two checks, one for $1,-787.20, dated July 5, 1932, and another for $560.79, dated September 19, 1932, were applied to the payment of a balance due by Wilkerson to plaintiff for plumbing and heating material, used in the equipment of the Kentwood High School Building, represented money which Wilkerson had earned under his Leesville contract. Wilkerson so testifies, and there is no evidence to the contrary. However, D. T. Griffith and W. M. McKinney, plaintiff's agents, testify that at the time the checks were received and the credit applied to the amount due by Wilkerson for material sold him for use in the Kentwood contract, paying the balance due on that account in full, they did not know that the money called for by the checks had been earned by Wilkerson under his Leesville contract. Wilkerson does not say that he so informed them at the time. We do not find in the record any evidence refuting the declarations of Griffith and McKinney on the subject, nor any fact or circumstance that would justify an inference that they knew, at the time, that the money had been earned under the Leesville contract. The record shows payments made by Wilkerson to plaintiff on account of material furnished him, used in the equipment of the Leesville High School Building, reducing the amount from $2,344.98 to $1,242. Griffith testifies that Wilkerson claimed that there was a balance due him under his Leesville contract as well as under his Kentwood contract, and that he agreed to assign plaintiff all his rights to the balances due him under both of his contracts. That plaintiff did receive an assignment of the balance due him under the Leesville contract, but did not receive the assignment of any balance due him under his Kentwood contract. The credits applied to the Leesville contract were earned under that contract, because the Kentwood contract was entered into in January, 1932, while the Leesville contract was not entered into until May 16, 1932, and the first order for material thereunder was not received until about June, 1932, by which time the Kentwood contract had been nearly completed and the material used in that contract mostly paid for.

Appellant cites us to the case Vinton Grain Co. v. Rickerson (La. App.) 148 So. 292. That case was based on facts similar to the present case, except in one important particular. It was established to the court in the case cited that Vinton Grain Company knew, when it received payment from Rickerson, that the money had come from Lawrence Construction Company.

The checks of July 5, 1932, and of September 19, 1932, were Wilkerson's personal checks, and as Wilkerson appears to have claimed that there was at that time a bal-

ance due him on account of the Kentwood contract, plaintiff's agents could have supposed that the same were derived from the Kentwood contract. And the fact is that Wilkerson does not claim to have been paid in advance on the Leesville work and such sums at that time could hardly have been due him under the Leesville contract. So the claim of Griffith and McKinney that they did not know at that time how the sums, represented by the checks, were earned, appears to be reasonable and is accepted as true.

Such being the case, the situation is like that which existed in Hortman-Salmen Co. v. Continental Co., 170 La. 879, 129 So. 515, 517. In that case the court said: "With reference to the defense of erroneous imputation of payments, operating to the prejudice of defendant, the evidence, bearing on this plea, is conflicting. However, the clear preponderance of it shows that the imputations were agreed to by Walker, the principal debtor, both expressly and tacitly. The preponderance of the evidence also shows that plaintiff did not know the origin of the sources of the funds out of which Walker, by his personal check, made the payments, and therefore that plaintiff was not guilty of improper practices in making the imputations. In these circumstances, though the imputations operated to the prejudice of defendant, they cannot be disturbed." Citing Grand Lodge, Benevolent Knights of America v. Murphy Construction Co., 152 La. 123, 92 So. 757, and W. B. Thompson & Co. v. Sporl, 160 La. 352, 107 So. 135, 138.

In the case last mentioned the court, quoting Grand Lodge, etc., v. Murphy Construction Co., 152 La. 123, 92 So. 757, said: " 'In general, and except where such imputation would amount to a fraud on the part of both debtor and creditor, the debtor may always impute the payments as he pleases; and cannot be controlled therein by a surety,' citing many authorities, including Robson v. McKoin, 18 La. Ann. 544, and R. C. C., art. 2163. And the imputation of payment made by the creditor with the express or tacit consent of the debtor is the same as an imputation of payment by the debtor himself."

In this case the evidence is conflicting. Wilkerson testifying as a witness says in one part of his testimony that he owes plaintiff nothing on his Leesville contract and that all material used in the Leesville contract had been paid for. In another part he says that the amount he owes is for material used in the Kentwood contract. In another, that the balance he owes is on an open running account. He denies that in giving the checks for $1,787.20 and $560.79 he agreed that they be imputed to the final payment of the amount due for material used in the Kentwood contract. According to D. T. Griffith and W. M. McKinney, plaintiff's agents, the checks for $1,787.20 and for $560.79, paid by Wilkerson, were under agreement with him imputed to the final payment of the amount due for material used in the Kentwood contract, thereby balancing that account.

The record contains a telegram, signed by Wilkerson, addressed to the plaintiff, bearing date November 9, 1932, the meaning of which is not clear; but it apparently corroborates Griffith and McKinney that plaintiff's claims against Wilkerson for material used in the Kentwood contract and for material used in the Leesville contract were not confused but distinct claims, and that the check for $1,787.20, received July 5, 1932, and the check for $560.79, received on September 19, 1932, balanced the Kentwood account. The telegram of November 9, 1932, refers to Leesville material. The amount $1,178, named in the telegram, is the exact amount said by Wilkerson to be due him under the Leesville contract in the assignment of the same, made to plaintiff on November 10, 1932, the day following the date of the telegram. Parker, plaintiff's agent, who obtained from Wilkerson the check for $1,787.20, was not called as a witness; but in this instance, the circumstances are such that no important presumption seems to arise in favor of appellant due to the fact that he was not called.

Taking the testimony as a whole, we feel satisfied that Wilkerson did agree with plaintiff's agents, at the time the checks for $1,787.20 and $560.79 were delivered, that they were payments on Kentwood material, paying therefor in full, leaving unpaid the balance for material used in the Leesville contract. We feel satisfied that Wilkerson consented to the imputation and that he had the right to do it, and we fail to see any fraud or wrongful conduct practiced in the matter on appellant.

The plaintiff prays in its answer to the appeal that the judgment be amended so as to allow 10 per cent. attorney's fees. Act No. 224 of 1918, § 8, says on the subject of attorney's fees: "Provided that amicable demand for payment shall first be made on the principal and surety and thirty days shall elapse thereafter without payment being made in order that the said 10 per cent. attorneys fees may be taxed." It is not proved that amicable demand for payment was made on Wilkerson and Great American Indemnity Company for the required length of time.

The judgment appealed from is in our opinion correct. Judgment affirmed. Appellant is to pay the cost of appeal. All other cost to be paid as ordered in the judgment of the lower court.