DOMENGEAUX, Judge.
A jury awarded plaintiff, James Keith Eaves, $5,000.00 for personal injuries and $10,000.00 for property damages sustained when the truck and fully loaded dump trailer which he owned and . was operating crashed into the rear of two trucks owned by defendant, McLeod Brothers Contractors, Inc., and being operated by two of defendant’s employees. In a 9-3 verdict, the jury found that defendant’s drivers were negligent and that plaintiff was not contributorily negligent. McLeod and its insurer, Insured Lloyd’s (which was also named as a defendant) filed a motion for new trial or remittitur which was denied by the trial court. Defendants then appealed.
Defendants argue that plaintiff was negligent and that defendants were not negligent; that the jury’s award was excessive and was not supported by the evidence; *438 and that the court erred in failing to grant defendants’ motions for a directed verdict and for a new trial or remittitur.
We reverse because we find the jury’s determination that plaintiff was free of contributory negligence was clearly wrong and contrary to the evidence.
The three vehicle mishap occurred on the Calcasieu River Bridge in Allen Parish on October 21, 1977, at 11:30 A.M. The bridge is located on Highway 26, a two-lane highway, between the towns of Oberlin and Mittie. The weather was clear, sunny, and dry. Visibility was good. The eastern approach to the bridge was straight and level for at least a half mile.
Collin W. Honea and John L. Spikes were the drivers of the McLeod Brothers’ trucks. They were traveling west. Honea was first on the narrow two-lane bridge in a large truck which had a lowboy trailer attached to it. A tractor was being transported atop the lowboy. Spikes followed in a flatbed pickup truck.
Both Honea and Spikes testified that they were traveling about the speed limit on the highway but slowed to between 15 and 30 miles per hour while crossing the bridge. Each denied that he stopped on the bridge or that he left his truck while on the bridge.
Spikes testified he first noticed plaintiff approaching the bridge from the east through the rear view mirror of his pickup truck when plaintiff was quite some distance away.[1] A few seconds later, when he next saw plaintiff through his mirror, he knew that plaintiff would not be able to stop before crashing the truck and dump trailer into his pickup truck so he swerved the pickup from behind the lowboy and into the left lane of the bridge to avoid being smashed between plaintiff’s truck and the lowboy. Moments later, the dump truck smashed first into the rear of the lowboy and then into the rear of the pickup truck before halting.
Plaintiff’s version of the accident differs appreciably from the account given by Ho-nea and Spikes. Plaintiff testified he first saw the two trucks on the bridge when he was about 150 yards away and was traveling west at 40 miles per hour in his truck and dump trailer. When he was 50 yards away, he testified that he noticed for the first time that both men were standing on the bridge out of their trucks, and that the trucks were stopped. He was still traveling at 40 miles per hour but when he saw that the men were standing on the bridge he began braking and blowing his horn. He said the men returned to their trucks and that the pickup truck then swerved into the left lane, preventing him (plaintiff) from passing the two vehicles. Within moments, he crashed into the lowboy and the pickup truck.
Neither Honea nor Spikes was injured. Plaintiff suffered only a four inch cut above his right ear and a couple of bruises on his leg and elbow.[2] He was not hospitalized. The impact totally destroyed plaintiff’s truck and the pickup truck driven by Spikes. Plaintiff’s dump trailer was damaged, but was reparable.
Plaintiff’s trial testimony at times conflicts with his earlier deposition, which is in the record. However, he did admit that the defendant’s trucks were on the bridge from the time he first saw them when he was 150 yards away until the time that he struck them from the rear. Although plaintiff contends he first became aware that the trucks were stopped when he was only 50 yards away, he testified at trial and in his deposition that he never saw the vehicles moving. He also testified that his attention was never distracted, nor was his vision or *439 view of the trucks ever impaired or obstructed. He further believed that he could have stopped his dump truck before impact if he had begun to apply the brakes when he was only 100 yards distant. Yet he maintained his original speed of 40 miles per hour and he did not begin braking until he was only 50 yards away, and that simply was not enough time to halt his fully loaded dump truck.[3]
We believe that the evidence, consisting entirely of testimony given by Honea, Spikes, and the plaintiff, establishes beyond question the contributory negligence of the plaintiff, regardless of which version of the accident is believed. Even if Honea and Spikes negligently stopped upon the bridge, plaintiff was contributorily negligent because he just saw the defendant’s trucks when he was 150 yards away, yet he failed to brake his vehicle in time to avoid the accident. Marcelle v. Chin-Bing, 364 So.2d 1345 (La.App. 4th Cir. 1978); Laird v. State Farm Insurance Co., 290 So.2d 343 (La.App. 4th Cir. 1974) (See Court’s discussion re negligence of Ballam). Had plaintiff been maintaining a proper lookout, he could have stopped in time.
Plaintiff claims that he did not brake earlier because he could not tell that the trucks were stopped on the bridge. He explained that the beams over the bridge cast shadows upon the bridge preventing him from noticing that the trucks were stopped.[4]
Plaintiff is nonetheless guilty of contributory negligence even if we accept as true his assertion that the bridge was shadowy or dark, because he continued to travel as if there was perfect clearance ahead (by not slowing down), even though he knew that defendant’s two trucks were on the bridge and he had not seen them move. McCain v. State Farm Mutual Automobile Insurance Company, 236 So.2d 922 (La.App. 3rd Cir. 1970).
Near the end of the trial plaintiff testified that Spikes’ actions in swerving the pickup into the left lane prevented him (plaintiff) from passing up the defendant’s trucks, thereby averting the accident. However, Spikes testified he only swerved into the left lane when it became apparent to him that the dump truck would strike him from behind in the right lane. Immediately after Spikes swerved, plaintiff struck the rear center of the lowboy. Absolutely nothing in the record suggests that plaintiff contemplated a passing maneuver. In fact, defendant’s drivers and plaintiff all testified that the bridge was very narrow. No evidence establishes that the bridge was wide enough to accommodate both plaintiff’s 18-wheel truck and dump trailer and the large truck hauling the lowboy.
Thus, we find that plaintiff’s failure to keep a proper lookout and failure to keep his vehicle under control amount to contributory negligence, thereby barring his recovery.[5] The jury was clearly wrong in finding otherwise.
For the above and foregoing reasons the judgment of the district court which affirmed the jury’s findings in favor of the plaintiff, James Keith Eaves, is reversed. It is hereby Ordered, Adjudged, and Decreed that there be judgment herein in favor of the defendants McLeod Brothers Contractors, Inc. and Insured Lloyd’s dis *440 missing plaintiff’s suit. All costs, at trial and on appeal, are assessed against plaintiff.

REVERSED AND RENDERED.

. Spikes was unable to estimate plaintiffs distance when he first noticed plaintiff approaching. Apparently the distance was great enough so that Spikes was not then concerned about an impending collision.

. According to the treating physician, plaintiffs cut required about 40 stitches to mend. These stitches were removed about ten days after the accident and the scar is now completely hidden by plaintiffs hair. Plaintiff suffered no disabling injuries and could have returned to work immediately after his stitches were removed had his dump truck not been totally destroyed.

. Plaintiff attributes his inability to stop in time to the short distance between the trucks when he began to brake and the momentum of his full load (between 16 and 18 cubic yards) of dirt. When the accident occurred, plaintiff was only 21 years old and had purchased his 18-wheel dump truck rig only one week before the accident. He had never operated a vehicle that large with a full load on a highway until only three days before the accident.

. Plaintiffs testimony on this point was refuted by the officer who investigated the accident. According to the officer, the bridge was not immersed in shadows; instead, the sun shown brightly on the bridge and visibility was unhampered. Interestingly, plaintiff claimed at first that the bridge was covered but he later retracted this testimony.

.Act 431 of 1979 incorporated the doctrine of comparative negligence into Louisiana law. Section 4 of Act 431 of 1979 provided that its provisions did not apply to claims arising before the effective date of the Act, August 1, 1980. Since plaintiffs claim arose on October 21, 1977, the doctrine of comparative negligence is not applicable.